**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PARAGON ADVANCED TECHNOLOGIES, INC., *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>PATRICK ECKELS,<br><br>　　　　　　Defendant. | Civil Action No. 23-03238 (GC) (RLS)<br>Civil Action No. 24-09840 (GC) (RLS) |
| PARAGON ADVANCED TECHNOLOGIES, INC., *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>RESTOR3D, INC.,<br><br>　　　　　　Defendant. | **MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER**[1] comes before the Court upon Plaintiffs Paragon Advanced

Technologies, Inc. and Paragon 28, Inc.'s Motion to Dismiss Defendant Patrick Eckels' Amended

Counterclaim to the First Amended Complaint (FAC) (ECF No. 123) pursuant to Federal Rule of

Civil Procedure (Rule) 12(b)(6).  Eckels opposed (ECF No. 125), and Plaintiffs replied (ECF No.

126).  The Court has carefully reviewed the parties' submissions and decides the matter without

---

[1]    On March 5, 2025, the Court consolidated Civil Action No. 23-03238 and Civil Action No.
24-09840, designating Civil Action No. 23-03238 as the lead case.  (ECF No. 127.)

oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, Plaintiffs' Motion is **GRANTED**.

## I.    __BACKGROUND__[2]

Plaintiffs develop and sell medical devices "in the foot and ankle segment of the orthopedic implant marketplace," which is a "highly competitive" industry.  (ECF No. 84 ¶¶ 7, 27, 48.)  Eckels is a former employee of Additive, a company that Plaintiffs acquired in 2021.  (*Id.* ¶¶ 1-3.)  While employed by Additive, Eckels is alleged to have entered into several agreements, including a Release Agreement, which prohibited him from disclosing any documents or property he obtained while employed by Additive.  (*Id.* ¶¶ 1-3, 51-53.)  Notwithstanding these agreements, Plaintiffs allege that Eckels misappropriated proprietary trade secret information and gave it to a direct competitor, restor3d.  (*Id.* ¶¶ 4-16.)

On June 13, 2023, Plaintiffs filed a Complaint and Motion for a Temporary Restraining Order (TRO), asserting misappropriation of trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1832, 1836 (Count 1); misappropriation of trade secrets in violation of the New Jersey Trade Secrets Act, N.J. Stat Ann. § 56:15-2 (Count 2); misappropriation of trade secrets in violation of the New Jersey common law (Count 3); three counts of breach of contract (Counts 4 through 6); and conversion (Count 7).[3]  (ECF Nos. 1 & 3.)  On July 12, 2023, the Court issued a TRO against Eckels, ordering him to keep confidential, and prohibiting him from disseminating to any person, any document or property obtained or received during the course of his employment

---

[2]    On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

[3]    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

with Additive.[4]  (ECF No. 35 at 2.[5])  Following the entry of the TRO, Eckels filed an Answer. (ECF No. 46.)

On May 14, 2024, Plaintiffs sought leave to file the FAC, which the Court granted.  (ECF Nos. 77 & 83.)  The FAC asserted the same seven causes of action and added the following additional three causes of action: unjust enrichment (Count Eight); unfair competition (Count Nine); and a violation of the New Jersey Computer Related Offenses Act (CROA), N.J. Stat Ann. § 2A:38A-3 (Count Ten).  (ECF No. 84.)  Eckels subsequently filed an answer to the FAC as well as a counterclaim for malicious abuse of process.  (ECF No. 96.)  On August 30, 2024, Eckels filed his Amended Answer to the FAC and Amended Counterclaim for malicious abuse of process. (ECF No. 113.)

Eckels contends that Plaintiffs filed this action as an "ulterior motive to inflict professional harm on [him] and his new employer," restor3d, and that the lawsuit is baseless because "Eckels never relied on [Plaintiffs'] confidential or trade secret information in performing his work for restor3d."  (ECF No. 113 at 26 ¶¶ 3-4.)  Eckels also asserts that Plaintiffs failed to "take even the most basic steps to protect its alleged 'confidential' or 'trade secret' information against public disclosure, much less those steps that would be expected to protect the wide-ranging scope of the 'confidential' or 'trade secret' information [Plaintiffs] accuse[] Eckels of misappropriating."  (*Id.* at 29 ¶ 15.)  This is so, Eckels argues, because Plaintiffs failed to provide necessary training to employees regarding "confidential" or "trade secret" information, and publicly disclosed their

---

[4]    On August 21, 2023, the Court entered a Stipulated Preliminary Injunction Order, which converted the TRO into a Preliminary Injunction that would remain in effect until further order of the Court or dismissal of the case.  (ECF No. 51.)

[5]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

trade secrets by way of their patent applications, publications, conference presentations, on-line tutorials, and other public disclosures. (*Id.* at 29-35 ¶¶ 15-30.)

Eckels also alleges that Plaintiffs' actions are based on the following "ulterior motives": (1) "using this litigation as means of creating a financial windfall for . . . []the current Vice President of Patient Specific sales at Paragon Advanced[] and . . . investors, while repairing his damaged reputation following [Plaintiffs'] botched acquisition of [Additive]"[6]; (2) "sabotaging Eckels' and restor3d's relationships with restor3d's third-party distributors in order to harm restor3d's competitive position in the market"; (3) "seeking revenge against Eckels for obtaining employment with restor3d after Eckels refused [Plaintiffs'] employment offers"; and (4) escalating the cost of this litigation to "forc[e] . . . Eckels and/or restor3d to settle these actions on favorable financial terms and divert attention from [Plaintiffs'] botched acquisition onto its allegations against Eckels and restor3d." (*Id.* at 36-39 ¶¶ 36-41.)

Eckels also asserts that Plaintiffs have taken the following "improper acts": (1) deliberately expanded the scope of alleged "trade secrets" disclosed; (2) sought broad discovery; (3) failed to identify their alleged "trade secrets; (4) initiated this lawsuit to distract from Plaintiffs' "botched acquisition" of Additive and to "recoup the financial investment" of investors; and (5) inflicted harm on Eckels. (*Id.* at 36-39 ¶¶ 15-44.) Eckels describes these improper acts as "highly aggressive litigation tactics." (ECF No. 125 at 22-26.)

---

[6]    Eckels alleges that once Plaintiffs acquired Additive, Plaintiffs "terminated [Additive's] entire sales force of independent sales distributors and sales representatives" and "shelved all of [Additive's] off-the-shelf products." (ECF No. 113 at 37 ¶ 37.) Plaintiffs were then "left without any sales force trained in the function and operation of the newly-acquired [Additive] products[.]" (*Id.*) This allegedly led to a decrease in sales from "roughly $12 million a year (prior to the acquisition) to less than $2 million a year (after the acquisition)" of Additive specific products. (*Id.*)

## II.    <u>STANDARD OF REVIEW</u>

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dir. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

## III.    <u>DISCUSSION</u>

"An action for malicious abuse of process 'lies for the improper, unwarranted, and perverted use of process after it has been issued . . . [*i.e.*], the employment of a process in a manner not contemplated by law.'" *Galbraith v. Lenape Reg'l High Sch. Dist.*, 964 F. Supp. 889, 897 (D.N.J. 1997) (alterations in original). "Bad motives or malicious intent leading to the institution of a civil action are insufficient to support a cause of action for malicious abuse of process." *Id.* (quoting *Fielder Agency v. Eldan Const. Corp.*, 377 A.2d 1220 (N.J. Super. Ct. Law. Div. 1977)). To sustain their claim for malicious abuse of process, Eckels must establish two elements: "(1)

[an] ulterior motive; and (2) [a] 'further act after the issuance of process representing the perversion of the legitimate use of the process.'" *Zebrowski v. Wells Fargo Bank, N.A.*, 657 F. Supp. 2d 511, 517 (D.N.J. 2009) (quoting *Tare v. Bank of Am.*, Civ. No. 07-583, 2009 WL 799236, at *7 (D.N.J. Mar. 24, 2009)).  "Further acts which lend themselves to an abuse of process include attachment, execution, garnishment, sequestration proceedings, arrest of the person and criminal prosecution and even such infrequent cases as the use of a subpoena for the collection of a debt." *Microsoft Corp. v. Softicle.com*, Civ. No. 16-2762, 2018 WL 10150945, at *2 n.1 (D.N.J. Apr. 30, 2018) (internal quotations omitted).

Plaintiffs contend that Eckels' Amended Counterclaim fails for three reasons.  First, Plaintiffs argue that the Amended Counterclaim "improperly puts forth [Plaintiffs'] entire lawsuit as the 'process' that [it] allegedly abused." (ECF No. 123-1 at 18.)  Second, Plaintiffs claim that the Amended Counterclaim "fails to adequately plead specific facts that show any ulterior purpose."  (*Id.*)  Third, Plaintiffs argue that the Amended Counterclaim "does not allege any 'further acts' that constitute abuse of this Court's process."  (*Id.*)

Eckels counters that he "does not 'characterize the entire lawsuit' as the 'process' which has been abused," but rather the Amended Counterclaim "clearly pleads that the process abused is the summons that Plaintiffs served on him."  (ECF No. 125 at 18.)  Regarding ulterior motives, Eckels asserts that the Amended Counterclaim "outlines Plaintiffs' ulterior motives in painstaking detail."  (*Id.* at 19-21.)  Finally, Eckels asserts that the Amended Counterclaim does allege "further acts" because that "requirement is satisfied where a plaintiff pursues a claim without 'any realistic potential damages recovery.'"  (*Id.* at 22 (quoting *NVR, Inc. v. Davern*, Civ. No. 15-5059, 2016 WL 7013459 (D.N.J. Nov. 30, 2016).)  The Court finds that Eckels does not plausibly state a claim for malicious abuse of process, so the Court will dismiss his Amended Counterclaim.

Here, Eckels has failed to allege improper "further acts" undertaken by Plaintiffs that give rise to a malicious abuse of process claim. A party cannot state a claim for malicious abuse of process where "there is no allegation . . . of any further act after or other than the filing of the complaints and proceeding upon them." *Klesh v. Coddington*, 684 A.2d 530, 536 (N.J. Super. Ct. Law. Div.), *aff'd and remanded*, 684 A.2d 504 (N.J. Super. Ct. App. Div. 1996); *Melillo v. Elizabeth Bd. of Ed.*, Civ. No. 11-4887, 2012 WL 6725837, at *7 (D.N.J. Dec. 27, 2012) ("When reviewing a malicious abuse of process claim, a court's 'focus must not be on what prompted the suit but what action plaintiff engaged in after commencement of the action.'" (quoting *Hoffman v. Asseenontv.Com, Inc.*, 962 A.2d 532 (N.J. Super. Ct. App. Div. 2009))). Filing a complaint does not, in and of itself, constitute a "further act."[7] *See, e.g.*, *Rutgers Cas. Ins. Co. v. Kennedy*, 2009 WL 3170860, at *5 (N.J. Super. Ct. App. Div. Sept. 30, 2009) ("Filing the complaint for the allegedly improper purpose of avoiding payment of a valid insurance claim does not satisfy the 'further act' requirement." (citation omitted)). Thus, Eckels' Amended Counterclaim for malicious abuse of process fails because the actions Eckels challenges are instituting and subsequently prosecuting an action. *See, e.g.*, *Klesh*, 684 A.2d at 536; *Read v. Profeta*, Civ. No.

---

[7]     To the extent Eckels asserts that the filing of an amended complaint is an improper "further act," (*see* ECF No. 113 ¶¶ 52, 54; ECF No. 125 at 22-23) that argument similarly lacks merit. *See Swarovski Optik N. Am. Ltd. v. iBuy Grp. LLC*, Civ. No. 23-01210, 2024 WL 4696614, at *2-3 (D.N.J. Nov. 6, 2024) (finding that the defendant's allegation that the "[p]laintiff's deliberate act of amending its [c]omplaint to make false and material misrepresentations to the Court which it knows not to be true" was insufficient to "state a claim for malicious abuse of process"); *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, Civ. No. 14-1327, 2017 WL 3944285, at *1-2 (D.N.J. Sept. 7, 2017) (finding that the defendant's counterclaim asserting that the "[p]laintiff acted 'in order to harass and oppress [c]ounterclaim [p]laintiffs, namely to force them to litigate in an improper court system and to cause them to incur substantial expense defending claims and allegations which [c]ounterclaim [d]efendants knew were objectively baseless,'" were conclusory and did not give rise to a malicious abuse of process claim). Further, to the extent Eckels attempts to support this argument by asserting that the FAC does not specify the misappropriated trade secret information, this argument lacks merit given the extensive allegations discussed in the FAC. (*See* ECF No. 84 ¶¶ 6-9, 29-39, 49, 57-58, 61, 64-68, 93, 107, 118.)

15-2637, 2017 WL 123438, at *6 (D.N.J. Jan. 11, 2017) ("[The plaintiff's] assertion in his complaint that [the defendant] stole his idea surely cannot constitute a 'further act' in furtherance of an ulterior, improper purpose; that accusation is the very gist of [the plaintiff's] legal claims; it is a factual allegation of the injury for which he seeks damages.  [The plaintiff's] complaint is designed to submit to a finder of fact the proposition that the defendants misappropriated [the plaintiff's] intellectual property.").

Although Eckels tries to frame Plaintiffs' "highly aggressive litigation tactics" as improper "further acts," Eckels provides no persuasive authority in support of that position.[8]  (ECF No. 125 at 22-26.)  Eckels primarily relies on *NVR, Inc. v. Davern*, where the court found that the defendant

---

[8]        As part of his argument, Eckels asserts that Plaintiffs' conduct during the discovery process, such as serving subpoenas to two of restor3d's distributors for "matters having nothing to do with [Plaintiffs'] claims against . . . Eckels or restor3d," satisfies the improper "further acts" requirement.  (ECF No. 113 ¶ 40; ECF No. 125 at 22-23.)  But courts in this district have rejected similar arguments related to alleged abuses of the discovery process when a litigant fails to allege "an oppressive act performed to pervert the actual process itself" or has failed to plead more than conclusory or speculative allegations.  *See, e.g.*, *Avaya, Inc. v. Cisco Sys., Inc.*, Civ. No. 10-5881, 2012 WL 2065536, at *4-7 (D.N.J. June 7, 2012) (finding that the defendant failed to allege an improper "further act" based on alleged inappropriate discovery requests because there was no "allegations of an oppressive act performed to pervert the actual process itself" and because the defendant failed to provide more than conclusory and speculative assertions); *Partners of Mass., LLC v. Fantasia*, Civ. No. 15-7960, 2019 WL 522107, at *5 (D.N.J. Feb. 11, 2019) (dismissing malicious abuse of process claim because the defendant failed to plead support for assertions that the plaintiff knew its claims were frivolous and that discovery was being undertaken for the sole purpose of "harassment, prolonging the litigation, and running up [the defendant's] legal fees); *Unitronics, Inc. v. Robotic Parking Sys. Inc.*, Civ. No. 09-3493, 2010 WL 2545169, at *6 (D.N.J. June 18, 2010) (finding that the plaintiffs failed "to adequately state a valid claim for malicious abuse of process" because the claim failed to "allege any acts subsequent to Defendants' use of the discovery process.").  Here, Eckels' assertions regarding the use of the discovery process are conclusory and speculative, and therefore are insufficient to support a malicious abuse of process claim.  *See Avaya*, 2012 WL 2065536, at *7 (noting that "to the extent Cisco contends that Avaya's act of using discovery information to unfairly compete with Cisco to further its 'Attack Cisco' campaign qualifies as a 'further act', those conclusory allegations are purely speculative and do not conform to the *Twombly* standard"); *Burgess v. Bennet*, Civ. No. 20-7103, 2021 WL 1050313, at *8 (D.N.J. Mar. 19, 2021) (noting that "[a]s alleged, there is no indication that [the] [d]efendants, regardless of their alleged nefarious intentions, were doing any more than utilizing the discovery mechanisms for their proper purpose").

stated an abuse of process counterclaim based on the plaintiff's conduct in instituting and prosecuting an action. 2016 WL 7013459. But that case is readily distinguishable. The plaintiff there brought suit against the defendant for allegedly stealing documents containing proprietary information. *Id.* at *1. The defendant asserted a counterclaim for malicious abuse of process on the grounds that the defendant had already agreed to return the documents, essentially mooting the case prior to the plaintiff bringing suit. *Id.* at *5. The court agreed that the complaint itself satisfied the "process" requirement and that plaintiff's conduct in "continu[ing] to litigate [the] case in a manner inconsistent with any realistic potential damages recovery" satisfied the "further act" requirement because discovery had revealed that the plaintiff had not lost any sales or employees based on the defendant's conduct. *Id.*

Unlike in *NVR*, there is no allegation that Plaintiffs already received the relief they now seek (*e.g.*, to enjoin Eckels from disclosing Plaintiffs' proprietary information and monetary damages for Eckels' alleged conduct), and there is no indication that Plaintiffs have litigated this case in a manner inconsistent with any potential damages recovery.[9] Even if it is determined that Plaintiffs' claims are unmeritorious, that is insufficient to sustain a claim for malicious abuse of process. *See Brennan v. Lonegan*, 2010 WL 5140448, at *2 (N.J. Super. Ct. App. Div. Dec. 20, 2010) ("To prevail in a malicious abuse of process claim, [the] plaintiff must show that the defendant committed a further wrongful act beyond merely filing an unmeritorious complaint[.]").

---

[9] Eckels further argues that Plaintiffs have "relentlessly pursu[ed] this litigation despite the fact that 'discovery in this suit to-date has revealed that [Plaintiffs'] potential damages recovery is highly limited'; for example, '[Plaintiffs] ha[ve] not identified a single lost sale or lost opportunity as a result of Eckels' alleged conduct.'" (ECF No. 125 at 23 (quoting ECF No. 113 ¶).) This argument also lacks merit because it fails to recognize that Plaintiffs' grounds for relief are not limited to monetary damages for lost sales or opportunities. (*See* ECF No. 84 at 28-29 ¶¶ 84, 86-87, 89; 44-45 ¶¶ 1-9.)

As another court in this district has observed, the *NVR* court "pushed malicious abuse of process very close to the line of malicious use of process," which is a separate tort that "may arise from the filing of an unfounded complaint." *See Read*, 2017 WL 123438, at *3 n.6, *5. Courts have closely scrutinized malicious abuse of process claims—including in cases involving business competitors—because of their potential chilling effect. *See Izzo v. Twp. of Raritan*, Civ. No. 15-1262, 2017 WL 3816537, at *10 (D.N.J. Aug. 31, 2017) ("[T]he tort of malicious abuse of process is 'treated with great caution because of [its] capacity to chill resort to our courts by persons who believe that they have a criminal complaint or civil claim against another.'" (citation omitted)); *Read*, 2017 WL 123438, at *6 ("There can be no rule that a party who sues a business competitor has *ipso facto* committed a tort."). Eckels' Amended Counterclaim does not fall into the narrow set of circumstances presented in *NVR*.[10] The Court finds Defendants' reliance on *Tedards v. Auty*, 557 A.2d 1030 (N.J. Super. Ct. App. Div. 1989) and *Melillo*, 2012 WL 6725837 equally unpersuasive.[11]

---

[10]     Eckels' Amended Counterclaim also does not fall within the categories of "further acts" recognized by courts in this district. *See Microsoft Corp.*, 2018 WL 10150945, at *2 n.1 ("Further acts which lend themselves to an abuse of process include attachment, execution, garnishment, sequestration proceedings, arrest of the person and criminal prosecution and even such infrequent cases as the use of a subpoena for the collection of a debt.").

[11]     The Court similarly finds that the Amended Counterclaim fails to sufficiently allege "ulterior motive." Eckels asserts that Plaintiffs' ulterior motives for initiating and continuing to litigate this action are motivated by Plaintiffs' desire to recoup damages caused by the "botched" acquisition of Additive, to inflict harm on Eckels' professional career, and to intimidate or coerce distributors associated with restor3d. (ECF No. 113 at 38-39 ¶¶ 36-41; ECF No. 125 at 19-21.) Similar to Eckels' assertions regarding the alleged improper "further acts," his allegations regarding Plaintiffs' "ulterior motives" are conclusory and unsupported. Further, even if Eckels could plead an "ulterior motive," the Court has already determined that the alleged "further acts" are not sufficient for purposes of pleading a malicious abuse of process claim, and therefore the "ulterior motive" element would not be satisfied. *See Zebrowski*, 657 F. Supp. 2d at 517 ("If the act is proper, however, the motive is immaterial.").

## IV.    **CONCLUSION**

For the foregoing reasons, and other good cause shown, Plaintiffs' Motion to Dismiss Eckels' Amended Counterclaim (ECF No. 123) is **GRANTED**.  Eckels' Amended Counterclaim is **DISMISSED** without prejudice.  An appropriate Order follows.

Dated: March 18, 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE